UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMPERSAND PUBLISHING, LLC,<br><br>            Petitioner,<br><br>      v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>            Respondent. | Case No. 1:21-mc-0140 (GMH) |

### MEMORANDUM OPINION AND ORDER

The merits of the underlying dispute in this case—whether Ampersand Publishing, LLC ("Ampersand"), an entity that used to publish a newspaper in Santa Barbara, California, should be held in civil contempt for failing to comply with a D.C. Circuit judgment enforcing an order of the National Labor Relations Board (the "NLRB" or the "Board") sanctioning the company for violations of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 151 *et seq.*—are not at issue here. Rather, the question currently before the Court is whether it can and should vacate a stay imposed in this case after Ampersand informed this Court that it had filed for bankruptcy protection.[1] Unfortunately, the Court has been hamstrung in its analysis by briefing that is either rudimentary (on the part of Ampersand's Chapter 7 Bankruptcy Trustee) or not fully developed (on

---

[1] The documents most relevant this Memorandum Opinion and Order are: (1) NLRB's petition for an adjudication of contempt, ECF No. 2; (2) the Order imposing the stay, Minute Order (July 31, 2023); (3) the NLRB's motion to lift the stay, ECF No. 26; (4) an opposition to that motion submitted by the trustee in Ampersand's bankruptcy case in the Bankruptcy Court for the Central District of California (the "Bankruptcy Trustee"), ECF No. 29; and (5) the NLRB's reply to that opposition, ECF No. 30. Page numbers cited herein are those assigned by the Court's CM/ECF system.

the part of the NLRB). Therefore, the Court will order supplemental briefing from both the agency and the Bankruptcy Trustee before resolving this issue.[2]

## I. BACKGROUND

In March 2015, the NLRB issued a decision finding that Ampersand had violated various provisions of the NLRA by, among other things, failing to bargain in good faith with the relevant union, unreasonably delaying production of requested information to the union, and failing to grant represented employees wage increases without giving the union notice and an opportunity to bargain. *See generally* ECF No. 17-6; *see also, e.g.*, *Ampersand Publ'g, LLC v. NLRB*, Nos. 15-1074, 15-1082, 2017 WL 1314946 (D.C. Cir. Mar. 3, 2017) (per curiam). That order imposed various mandatory and prohibitory injunctions, but also required Ampersand to "make [bargaining] unit employees whole" for any losses they incurred due to the company's statutory violations and to reimburse the union for costs and expenses incurred in collective bargaining, among other things. *See* ECF No. 17-6 at 2–4. None of the monetary amounts is fixed in the order. *See id.* The D.C. Circuit ultimately rejected Ampersand's challenge and granted the NLRB's application for enforcement of that order in March 2017. *See Ampersand Publ'g*, 2017 WL 1314946 (D.C. Cir. Mar. 3, 2017) (per curiam). Some time thereafter, in July 2021, the NLRB filed a petition to adjudicate Ampersand in civil contempt for its failure to comply with the D.C. Circuit's judgment, which Ampersand opposes. *See* ECF Nos. 2, 3. Along with seeking a contempt finding and order requiring compliance with the injunctions included in the NLRB order, the petition requests that

---

[2] The Court notes that the Bankruptcy Trustee is not officially a party to this case. However, he has inserted himself into it by submitting a response to the NLRB's motion, as discussed in Section I, *infra*. More, courts have noted that a Chapter 7 bankruptcy trustee "is properly substituted for the debtor in litigation regarding pre-petition causes of action involving claims for [monetary relief]" and at least one court has allowed the trustee's participation in litigation even in the absence of a motion under Rule 25(c) of the Federal Rules of Civil Procedure, which governs substitution of parties where there is a "[t]ransfer of [i]nterest." *Adels v. Bierbach ex rel. Elders*, No. 09-cv-2363, 2011 WL 1457132, at *4–5 (M.D. Pa. Apr. 15, 2011) (quoting Fed. R. Civ. P. 25(c)). The Court therefore expects that the Bankruptcy Trustee will comply with its request for further briefing.

the court impose certain fines on Ampersand—specifically, a prospective fine of up to $50,000 for any future violations of the NLRA plus a fine of up to $1,000 per day for each day the violations continue, and a conditional fine of $50,000 (to be deposited in the registry of the U.S. District Court for the Central District of California and returned when Ampersand complies with other court-ordered requirements attendant on the requested contempt finding); order Ampersand to pay the NLRB's costs, expenses, and attorney's fees incurred in connection with the contempt proceeding; and, as above, order it to "make all bargaining unit employees whole" for losses traceable to Ampersand's statutory violations and reimburse the union for its costs and expenses incurred in collective bargaining. ECF No. 2 at 23–31. Other than the fines, for which the NLRB has requested specific amounts, the other monetary payments are to be agreed upon by the parties or fixed by a further order of the court. *See id.* In November 2021, the D.C. Circuit referred the dispute to the undersigned as special master to recommend factual findings and a disposition of the petition. *See* ECF No. 1.

In July 2023, after the parties had completed briefing on motions for summary judgment, Ampersand filed with this Court a notice that it had sought protection under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Central District of California. ECF No. 25. Following its ordinary practice in cases where it has received notice that a party has filed a bankruptcy petition, the Court promptly entered an order staying this case "pursuant to 11 U.S.C. [§] 362," the automatic stay provision of the Bankruptcy Code. Minute Order (July 31, 2023). Approximately three weeks later, the NLRB filed a motion asking this Court "to lift its automatic stay of proceedings" because the automatic stay provision of 11 U.S.C. § 362(a) "does not apply to enforcement of non-monetary [NLRB] orders or related contempt proceedings because such proceedings are

3

excepted from the stay under Section 362(b)(4)."³ ECF No. 26 at 1. The NLRB further asserted that these proceedings are also exempted because they are contempt proceedings to "vindicate the integrity of its own authority as well as that of the D.C. Circuit." *Id.* at 4. After the Court set a briefing schedule, the NLRB and Ampersand "jointly request[ed] . . . an extension of one week for their respective filing deadlines to allow the [B]ankruptcy [T]rustee time to review the NLRB's initial motion and determine whether or not to oppose it," ECF No. 27, a request that was promptly granted, *see* Minute Order (Sept. 1, 2023). The Bankruptcy Trustee apparently determined that he should oppose the NLRB's application but did not appear in this action. Instead, he (through counsel) sent an email chain to the undersigned's law clerk asserting that "[t]he [Bankruptcy] Trustee believes that stay relief motions should be filed in [Ampersand's] Bankruptcy Case in the Central District of California."⁴ ECF No. 29 at 1. In the interest of judicial efficiency, the Court ordered that email chain, which included approximately one paragraph of legal argument supporting the Bankruptcy Trustee's position that this Court is the improper forum for the NLRB's application, to be filed on the docket of this case. *See id.* Ampersand, the debtor, did not respond to the NLRB's motion. The NLRB filed a short reply to the Bankruptcy Trustee's submission. *See* ECF No. 30.

---

³ The NLRB informed the bankruptcy court of its motion by filing a notice in that court. Notice of Motion to Lift Stay, *In re Ampersand Publ'g, LLC*, No. 23-bk-10601 (Bankr. C.D. Cal. Sept. 14, 2023), ECF No. 23.

⁴ The Bankruptcy Trustee stated that, because he "believe[d]" any motion for relief from the stay should be filed in Ampersand's bankruptcy case, his "counsel have not appeared pursuant to the procedures (pro hac vice motion plus sponsoring member) set forth in [this District's Local Civil Rule] 83.2," citing the "burdens imposed" by that rule. ECF No. 29 at 1, 3. The Court finds that explanation legally and procedurally infirm. Whatever the burdens imposed by a court's rules, submitting substantive argument in opposition to a pending motion via email to the presiding judge's chambers is not a recognized way to be heard in a federal court—nor should it be attempted again in this case. The undersigned nevertheless appreciates that the Trustee "intend[ed] no disrespect to the Court." ECF No. 29 at 1.

4

## II. DISCUSSION

The briefing thus presents two questions: (1) Does this Court have the authority to grant the NLRB's requested relief? And, if so, (2) should such relief be granted? The answer to the first question is clearly yes. The second question, on the other hand, presents more complicated issues that will benefit from further briefing.

### A. The Court's Authority

As a general matter, under 11 U.S.C. § 362(a), the filing of a bankruptcy petition automatically stays proceedings against a debtor, subject to a request to lift the stay pursuant to 11 U.S.C. § 362(d). *See, e.g.*, *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 219 (4th Cir. 1994) ("Under 11 U.S.C. § 362, when a bankruptcy petition is filed, the automatic stay provisions take immediate effect. Section 362(d) allows a bankruptcy court to lift the stay[.]"); *In re Horton*, 595 B.R. 1, 2 (Bankr. D.D.C. 2019). However, Section 362(b) excepts certain proceedings from the ambit of Section 362(a)'s automatic stay. *See* 11 U.S.C. § 362(a) ("*Except as provided in subsection (b) of this section*, a petition filed under . . . this title . . . operates as a stay[.]" (emphasis added)), 362(b) (listing actions and proceedings for which "the filing of a [bankruptcy] petition . . . *does not operate as a stay*" (emphasis added)). Among those are

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.

11 U.S.C. § 362(b)(4).[5]

---

[5] Prior to 1998, the Bankruptcy Code contained two separate provisions excepting actions by governmental units enforcing their police or regulatory power: Section 362(b)(4) excepted the commencement or continuation of an action "by a governmental unit to enforce such governmental unit's police or regulatory power" and Section 362(b)(5) excepted "the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." *See, e.g.*, *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 938 (6th Cir. 1986); *see also United States v. LTV Steel Co.*, 269 B.R. 576, 581 (W.D. Pa. 2001); *In re Mohawk Greenfield Motel Corp.*, 239 B.R. 1, 6 n.6 (Bankr. D. Mass. 1999). The provision was then

5

As noted, the Bankruptcy Trustee contends that this Court cannot entertain the NLRB's motion because only the bankruptcy court has the authority to lift the automatic stay. Although, as discussed immediately below, his conclusion is faulty, the *legal premise* is an accurate statement of the law. *See, e.g.*, *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 62–63 (6th Cir. 1983) (stating, "[t]he legislative history of § 362(d)[, the provision governing relief from the automatic stay,] unambiguously identifies the *bankruptcy* court as the exclusive authority to grant relief from the stay," and collecting cases); *see also, e.g.*, *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 261 (3d Cir. 2006) ("Only the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor." (quoting *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1992)); *Gruntz v. Cnty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1082–83 (9th Cir. 2000) ("The automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts."); *Farley v. Henson*, 2 F.3d 273, 275 (8th Cir. 1993) ("Only the bankruptcy court may grant relief from the automatic stay."); *Ingersoll-Rand Fin. Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir. 1987) ("The bankruptcy court . . . may lift a stay upon request of a party in interest following notice and a hearing. In the instant case, the bankruptcy court has not granted relief from the stay and none of the exceptions under [Section 362(b)] is applicable. Therefore, Miller Mining is prevented from proceeding[.]" (internal citations omitted)); *Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (7th Cir. 1986) ("Relief

---

amended "to combine former Sections 362(b)(4) and (5) with no significant change in the combined language of the police powers exception. Thus, case law interpreting the police powers exception prior to the 1998 amendment still applies." *LTV Steel Co.*, 269 B.R. at 581 n.5; *see also In re Halo Wireless, Inc.*, 684 F.3d 581, 587 n.5 (5th Cir. 2012) (noting that "courts still find the reasoning" of cases interpreting former Section 362(b)(5) "persuasive and applicable under current law.").

from the effect of the automatic stay provisions of section 362(a)(1) must be sought from the bankruptcy court pursuant to section 362(d)[.]").

The conclusion that, because requests to lift the automatic stay must be heard by the bankruptcy court, the NLRB's motion cannot proceed before this Court, however, misses the point. The NLRB is not seeking to lift the automatic stay; it is arguing that the automatic stay never attached in the first place because this case is excepted from its operation pursuant to 11 U.S.C. § 362(b)(4). *See* ECF No. 26 at 1 (arguing that the "automatic stay provision in Section 362 of the Bankruptcy Code . . . does not apply" to this action pursuant to Section 362(b)(4)); ECF No. 30 at 1 ("As the NLRB explained in its Motion, the automatic stay triggered by the bankruptcy petition never applied to this contempt proceeding because it is exempt from the automatic stay[.]"); *see also NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986) ("[Section 362] provides that governmental actions to enforce police or regulatory powers are automatically excepted form the operation of the automatic stay. There is no occasion therefore to seek relief from a stay which has no application to the proceeding in question."). In essence, the NLRB seeks a ruling from this Court that its July 31, 2023 minute order staying this case pursuant to the automatic stay provision of the Bankruptcy Code should be deemed void *ab initio* as improvidently entered. Minute Order (July 31, 2023). That is, to the extent that the NLRB is asking for a stay to be lifted, it is the stay allegedly erroneously imposed by this Court after Ampersand filed notice of its bankruptcy petition, rather than a stay that arose by operation of law upon the filing of that petition, which the NLRB argues did not occur.

Properly framed, it is clear that this Court has the power and jurisdiction to grant the relief the NLRB seeks. It is well-established that the court in which an action is pending has the authority to determine if the automatic stay applies in the first instance. *See, e.g.*, *Edward Cooper Painting*,

7

804 F.2d at 939 ("The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay." (quoting *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*, 765 F.2d 343, 347 (2d Cir. 1985)); *accord SEC v. Bilzerian*, 131 F. Supp. 2d 10, 14 (D.D.C. 2001), *aff'd*, 75 F. App'x 3 (D.C. Cir. 2003); *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990); *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 387 (3d Cir. 1987); *Singleton v. Fifth Third Bank of W. Ohio*, 230 B.R. 533, 538–39 (B.A.P. 6th Cir. 1999); *Bennett v. Mfrs. & Traders Tr. Co.*, No. 99-cv-827, 2000 WL 1611065, at *1 (N.D.N.Y. Oct. 18, 2000); *Holland v. High Power Energy*, 248 B.R. 53, 56–57 (S.D.W. Va. 2000); 3 Collier on Bankruptcy ¶ 362.08 (16th ed. 2022); *see also, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 (9th Cir. 2005) ("We therefore hold, in accordance with established law, that a district court has jurisdiction to decide whether the automatic stay applies to a proceeding pending before it, over which it would otherwise have jurisdiction. Specifically, as applied to this case, we hold that the district court has jurisdiction to decide whether [a pending action] . . . comes within the exception to the automatic stay for 'police or regulatory power' under § 362(b)(4)."). Therefore, this Court will address the NLRB's motion on its merits.

### B.     Exception from the Automatic Stay

The NLRB maintains that these proceedings are not stayed by Section 362(a) on two independent bases: the exception included in Section 362(b)(4) and the contention that the contempt sanctions sought are intended to vindicate the authority of the agency and the court.

    1.  11 U.S.C. § 362(b)(4)

Again, the NLRB claims that this action is excepted from the automatic stay as "an action or proceeding by a governmental unit . . . to enforce [its] . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding . . . to enforce such governmental unit's . . . police or regulatory power." 11 U.S.C. § 362(b)(4); *see also* ECF No. 26 at 3–6. The Bankruptcy Trustee makes no argument on that point. *See generally* ECF No. 29. The NLRB, for its part, offers an oversimple argument that appears to elide at least one critical fact and ignore some pertinent case law. Further briefing from both the NLRB and the Bankruptcy Trustee on this question will therefore be necessary. To assist them in crafting their further submissions, the Court outlines its concerns below.

The NLRB starts out on solid footing. *See* ECF No. 26 at 3 & n.6. Case after case has held that unfair labor practice actions brought by the NLRB are within the scope of Section 364(b)(4)'s exemption. *See, e.g.*, *NLRB v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d Cir. 1992) (per curiam) (following the First, Fifth, Sixth, Seventh, and Ninth Circuits in holding "(1) that the NLRB is a 'governmental unit,' and (2) that NLRB unfair labor practice proceedings and enforcement proceedings are proceedings to enforce the NLRB's police or regulatory powers" such that they are excepted from the stay by Section 362(b)(4)); *accord NLRB v. Cont'l Hagen Corp.*, 932 F.2d 828, 832-34 (9th Cir. 1991); *NLRB v. P*I*E Nationwide, Inc.*, 923 F.2d 506, 512 (7th Cir. 1991); *Edward Cooper Painting*, 804 F.2d at 941 & n.6; *Ahrens Aircraft, Inc. v. NLRB*, 703 F.2d 23, 24 (1st Cir. 1983) (per curiam); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir. 1981) (per curiam); *cf. Brock v. Rusco Indus., Inc.*, 842 F.2d 270, 273 & n.8 (11th Cir. 1988) (relying on *NLRB v. Evans Plumbing* to hold that an action by the Secretary of Labor for an injunction against an employer who violated the Fair Labor Standards Act was excepted from the

automatic stay as an action by a governmental unit to enforce its police or regulatory powers); *EEOC v. McLean Trucking Co.*, 834 F.2d 398, 403 & n.9 (4th Cir. 1987) (relying on cases holding that unfair labor practices actions brought by the NLRB are excepted from the automatic stay under Section 362(b)(4) to find that an action by the EEOC to enjoin violations of Title VII and the Age Discrimination in Employment Act was also excepted); *EEOC v. Hall's Motor Transit Co.*, 789 F.2d 1011, 1013 (3d Cir. 1986) (similar); *EEOC v. Rath Packing Co.*, 787 F.2d 318, 324 (8th Cir. 1986) (similar).

The NLRB then asserts that "Section 362(b)(4) provides that the automatic stay applies to governmental units that are seeking to enforce 'a money judgment.' But 'courts have drawn a distinction between the use of the terms "entry" and "enforcement"' such that 'the mere *entry* of a money judgment by a governmental unit is not affected by the automatic stay.'" ECF No. 26 at 4 (footnotes omitted) (first quoting 11 U.S.C. § 392(b)(4), and then quoting *Cont'l Hagen Corp.*, 932 F.2d at 834). That, too, is well supported in the case law. *See, e.g.*, *15th Ave. Iron Works*, 964 F.2d at 1337 (allowing entry of a judgment requiring payment to various union funds but noting that "collection of that judgment after entry" would require leave of the bankruptcy court); *Cont'l Hagen Corp.*, 932 F.2d at 835 ("We agree with the reasoning of the courts which have drawn a distinction between the entry of judgment and the enforcement of judgment with respect to a backpay provision. We further agree that § 362(b) permits us to enforce the N.L.R.B. backpay provision by an entry of judgment."); *P\*I\*E Nationwide*, 923 F.2d at 512 ("[The NLRB] does not run afoul of section 362(b)(5)[6] by attempting to reduce a claim to judgment: [it] is merely seeking entry of judgment and is not trying to seize P\*I\*E's property to satisfy a money judgment."); *Edward Cooper Painting*, 804 F.2d at 943 ("At most, the NLRB unfair labor practice proceeding

---

[6] *See* note 5, *supra*.

against respondent resulted in the entry of a money judgment. Section 362(b)(5) provides that only attempts to *enforce* money judgments are subject to the automatic stay."); *Evans Plumbing*, 639 F.2d at 293 (holding that entry of a judgment in the NLRB's favor for injunctive relief and back pay was permitted under Section 362(b)(4) and saving for another day the question of whether enforcement of a money judgment is exempt from the automatic stay). Relying on that precedent, the NLRB concludes that, because it "is not seeking to enforce any monetary remedies," but merely wants "a determination that Ampersand should be subject to the[] [requested] penalties based on its contumacious conduct," these proceedings do not fall into what has been called the "exception to the exception" for enforcement of money judgments. ECF No. 26 at 4; *Penn Terra Ltd. v. Dep't of Env't Res.*, 733 F.2d 267, 272 (3d Cir. 1984).

The agency thus presents a straightforward argument: proceedings brought by governmental units in the exercise of their police or regulatory power, like this one, are excepted from the automatic stay by Section 362(b)(4). So are proceedings that do not seek enforcement of a money judgment, but only entry of such a judgment, which the NLRB claims these are. But the NLRB glosses over one important fact: A judgment that includes monetary remedies has already been entered in this case. When the D.C. Circuit denied Ampersand's petition for review and granted the NLRB's cross-application for enforcement in March 2017, that judgment rendered enforceable the NLRB's order of March 2015—with its requirements to make bargaining unit employees whole and reimburse the union for costs and expenses (as well as mandatory and prohibitory injunctions).[7] *See Ampersand Publ'g*, 2017 WL 1314946, at *1; *see also* ECF No. 2 at 1 (characterizing the D.C. Circuit's March 2017 opinion as the "Judgment" in this case). The NLRB's

---

[7] The NLRB "differs from the majority of administrative agencies in that it does not possess authority itself to exact obedience to its own orders," *Ardizzoni v. NLRB*, 663 F.2d 130, 132 (D.C. Cir. 1980) (per curiam); that is, the NLRB's orders are not "self-executing," *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 890 (7th Cir. 1990). Rather, "it is

11

contempt petition seeks further monetary remedies in addition to those included in the NLRB's order—a prospective fine of up to $50,000 plus up to $1,000 per day for further statutory violations; a conditional fine of $50,000 to be deposited in the registry of the U.S. District Court for the Central District of California; and the costs, expenses, and attorney's fees the NLRB incurred in connection with the contempt petition.  ECF No. 2 at 25, 27, 28, 30.  According to the petition, such relief is appropriate because Ampersand "fail[ed] and refus[ed] to comply" with the D.C. Circuit's judgment, ECF No. 2 at 1; the NLRB's motion for summary judgment on the contempt petition asserts that "the remedies requested by the Board in this matter are . . . not only appropriate, but necessary, . . . to coerce compliance with the Judgment," ECF No. 17-1 at 13.  Considering those details, the proceedings here begin to look something like attempts to enforce that judgment.

More, a number of cases have indicated that, once a judgment for monetary relief is entered, further proceedings connected with that judgment are likely—or even necessarily—efforts to enforce that judgment for the purposes of Section 362(b)(4) and therefore should be stayed.  In the words of the Second Circuit in *SEC v. Brennan*, "various circuits have insisted that the line between 'police or regulatory power' on the one hand, and 'enforcement of a . . . money judgment' on the other, be drawn at entry of judgment. . . .  [They] have drawn the line there because that is the most logical place for it."  230 F.3d 65, 72 (2d Cir. 2000) (first alteration in original) (quoting 11 U.S.C. § 362(b)(4)); *see also, e.g.*, *SEC v. Miller*, 808 F.3d 623, 633 (2d Cir. 2015) (noting that, although *Brennan* did not intend to "impose a one-factor timing test," timing "constitutes a crucial factor in [the] analysis"); *United States v. Nicolet, Inc.*, 857 F.2d 202, 210 (3d Cir. 1988) ("We find . . . that it was Congress' intent that proceedings such as this[, which are brought by a governmental entity acting pursuant to its police power,] be exempt from the automatic stay *up to and*

---

only the appellate court's order, enforcing the [NLRB's] order, that binds."  *Blankenship & Assocs., Inc. v. NLRB*, 54 F.3d 447, 449 (7th Cir. 1995).

*including entry* of a monetary judgment." (emphasis added)). Indeed, *Brennan* involved a contempt proceeding against a debtor who was subject to a judgment requiring disgorgement of ill-gotten gains from securities fraud; that proceeding resulted in an order requiring him to repatriate certain assets and deposit them in the registry of the court. *See* 230 F.3d at 69. The Second Circuit found a violation of the automatic stay because the repatriation order was in the service of enforcing the prior judgment and therefore not covered by Section 362(b)(4)'s exception to the automatic stay. *See id.* at 71.

There is countervailing authority, however. Section 362(b)(4)'s carve-out for proceedings to enforce money judgments serves to protect the assets of the debtor, which "constitute a fund out of which all creditors are entitled to share," from depletion by the government "to the detriment of all other creditors." *Penn Terra*, 733 F.2d at 272 (quoting S. Rep. No. 989, 95th Cong., 2d Sess. at 52 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5838), and H. Rep. No. 95–595 at 343, *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6299). The Third Circuit explained in *Penn Terra* that,

> [i]n common understanding, a money judgment is an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist of only two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant. It need not, and generally does not, contain provisions for its enforcement. . . .
>
> The paradigm for . . . a proceeding [to enforce a money judgment] is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy that judgment. It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-debtor, which is prescribed by subsection 362(b)(5).[8]

---

[8] As noted in note 5, *supra*, in 1998 former Section 362(b)(5), which concerned proceedings to enforce judgments procured by governmental units in furtherance of their police or regulatory power, was folded into the current Section 362(b)(4).

733 F.2d at 275. Thus, a proceeding that merely "attempt[s] to fix damages" for a violation of a police power or regulatory law "is not stayed under the automatic stay." S. Rep. No. 989, 95th Cong., 2d Sess. at 52 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5838); H. Rep. No. 95–595 at 343, *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6299). Here, the judgment, although it contains provisions for monetary payments, does not fix the amount of those payments. *See* ECF No. 17-6. Indeed, as the NLRB's contempt petition makes clear, those payments will be set either by agreement of the parties or by a further court order. *See* ECF No. 2 at 26–27. The judgment at issue is therefore unlike the "money judgment" defined in *Penn Terra*—that is, an order identifying "the parties for and against whom judgment is being entered" *and* designating "a *definite* and *certain*" amount owed. 733 F.2d at 275. Put another way, the NLRB would not appear to be able to "attempt[] to seize property of [Ampersand] in order to satisfy" those monetary provisions of the NLRB's order, *id.*, because no amount has been fixed and no amount will be fixed unless Ampersand agrees to it or the D.C. Circuit enters another order. *See* ECF No. 2 at 26–27.

Likewise, much of the additional monetary relief sought by the contempt petition will also require further proceedings. The amount of the NLRB's "costs, expenses, and reasonable attorneys' fees" incurred in connection with the contempt petition has not been fixed and will not be fixed unless Ampersand agrees to it or the D.C. Circuit enters another order. *See id.* at 28. And the NLRB's request for a prospective fine of "up to $50,000 for each and every future violation of the Judgment, and a further fine of up to $1,000 per day for each day the Court finds the violations have continued" requires, by its terms, a further proceeding and order from the D.C. Circuit: "[Prospective] [f]ines may only be imposed if the NLRB institutes a new civil contempt proceeding in [the D.C. Circuit], in which the NLRB shall be required to establish its allegations by clear and convincing evidence." *Id.* at 30–31.

The NLRB's request for a conditional fine of $50,000 to be paid into the registry of the U.S. District Court for the Central District of California is more troublesome, resembling as it does the violative repatriation order of *Brennan*. But even so, that might not require a stay of these proceedings. In *EEOC v. Rath Packing*, the district court found that the defendant company had violated Title VII and referred the case to a special master to recommend appropriate relief. 787 F.2d at 322. After the special master made his recommendation, which included a back pay award of approximately $1 million, Rath Packing filed for Chapter 11 bankruptcy protection. *See id.* at 323. Thereafter, the district court adopted the special master's recommendation in large part and entered a judgment that included a payment plan for the back pay award. *See id.* at 323, 326. Rath Packing appealed, arguing, among other things, that the Title VII proceedings should have been stayed pursuant to the Bankruptcy Code's automatic stay and that the entry of the judgment violated that stay. *See id.* at 323, 325–26. The Eighth Circuit held that the entry of judgment violated Section 362(a) to the extent that it included provisions related to enforcement—that is, the payment plan. *See id.* at 326–27. However, the court also held that the Title VII proceedings were not stayed by the bankruptcy filing; instead, they were excepted by virtue of Section 362(b)(4) as proceedings brought "by a government unit to enforce its police or regulatory powers." *Id.* at 324–25. That is, the court held that "the automatic stay provision did not apply to th[e] Title VII action brought by EEOC" while at the same time holding that the entry of judgment in the form conceived by the district court did violate the automatic stay. *Id.* at 325–26. Under the logic of *Rath Packing*, these contempt proceedings might well be excepted from the automatic stay under Section 362(b)(4) even if they could—and even if they do—result in a judgment that itself violates the automatic stay.

However, neither interested party has wrestled with these concepts or many of these precedents in their submissions to the Court. The prudent course is therefore to request further briefing.

### 2. Civil Contempt Proceedings

The NLRB argues in the alternative that

> [t]he automatic stay is also not applicable here because the NLRB's primary purpose in seeking a contempt finding is to vindicate the integrity of its own authority as well as that of the D.C. Circuit. Courts have found that contempt orders to uphold the dignity of the court are excepted from the automatic stay."

ECF No. 26 at 4–5 (quoting *Bilzerian*, 131 F. Supp. 2d at 15). The NLRB cites *Bilzerian* and a case it relies on—*NLRB v. Sawulski*, 158 B.R. 971 (E.D. Mich. 1993)—as support. *See id.* at 4–5 & nn.11–14. The NLRB might be right; the two cases it cites support its position. But those cases, particularly *Sawulski*, are problematic and other authority indicates that civil contempt proceedings are generally stayed pursuant to Section 362(a)(1).

The procedural history of *Sawulski* is complicated and not completely clear from the opinion. It appears that the Sixth Circuit had, on April 18, 1990, issued a judgment enforcing an order of the NLRB imposing prohibitory and mandatory injunctions on a company and its principal for violations of the NLRA. 158 B.R. at 973–74. Thereafter, the Sixth Circuit issued an order on March 30, 1992, finding the company and its principal in contempt for failing to comply with the judgment. *See id.* Then, on April 28, 1993, the Sixth Circuit issued an order requiring the two contemnors to comply with the court's prior orders and to pay the NLRB's attorney's fees as well as fines for their failure to comply with the March 30, 1992 order, including ongoing daily fines if they did not promptly comply with that order. *See id.* The case was then referred to a District Judge as special master to enforce the orders of the Court of Appeals and determine whether the contempt had been purged. *See id.* at 972. After the referral, both contemnors filed for bankruptcy protection and "made an oral motion to the Court that the[] proceedings be stayed pursuant to the

16

bankruptcy filings." *Id.* at 974.  Noting a "distinction between contempt proceedings intended to effectuate collection of a judgment and those intended to 'uphold the dignity of the court,'" only the latter of which is excepted from the automatic stay, the court concluded that under the facts of the case the proceeding before it was "intended to uphold the dignity of the court." *Id.* at 976–77 More specifically, it determined that "the contempt fines assessed by the Sixth Circuit were imposed as a penalty to vindicate the dignity and authority of the court." *Id.* at 977; *see also Bilzerian*, 131 F. Supp. 2d at 15 ("The court finds this contempt proceeding clearly is to vindicate the integrity of the court.").

Here, no fine has yet been imposed, so the hook on which *Sawulski* hung its conclusion that the contempt proceeding was intended to "vindicate the dignity and authority of the court" is missing.  *Id.*  More fundamentally, however, only criminal contempt can be "used to punish, that is, to 'vindicate the authority of the court' following a transgression"; civil contempt, on the other hand, is used either to "compel future compliance or to aid the [complainant]" by "compensat[ing] [it] for losses sustained."  *Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003) (quoting *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828, 829 (1994)); *see also, e.g.*, *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391 (6th Cir. 1991) ("[T]he purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant.  Whereas, the purpose of criminal contempt is punitive—'to vindicate the authority of the court.'" (internal citations omitted) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)); *In re Just Brakes Corp. Sys., Inc.*, 108 F.3d 881, 885 (8th Cir. 1997) ("[T]he judicial power to punish for criminal contempt of a court order is carefully distinguished from the power to remedy a violation of that order through civil contempt.").  Representations made in the NLRB's filings in this case indicate that these proceedings are the latter.  *See, e.g.*, ECF No. 2 at 1 ("The National Labor

Relations Board . . . respectfully petitions this Court to adjudge Respondent Ampersand Publishing, LLC . . . in civil contempt for failing and refusing to comply with the Court's March 3, 2017 Judgment[.]"), 24 (seeking an order "requiring Ampersand, its officers, agents, successors, and assigns to purge themselves of such contempt"), 29–30 (seeking a conditional fine to coerce compliance with the D.C. Circuit's judgment), 30 (seeking a prospective fine "[t]o ensure future compliance with the Judgment"); ECF No. 17-1 at 10 (seeking summary judgment in the NLRB's favor on its "petition for an adjudication in civil contempt and for other civil relief"), 14–15 (setting out the standards for civil contempt). It would appear, then, that as civil contempt proceedings, their purpose *cannot* be to vindicate the authority of the court.

Perhaps that explains the multitude of cases finding that civil contempt proceedings are subject to the automatic stay. Those cases, too, make a distinction between criminal contempt proceedings, which by virtue of Section 362(b)(1) are not subject to the automatic stay, and civil contempt proceedings, which are. *See, e.g.*, *In re Caffey*, 384 F. App'x 882, 886 (11th Cir. 2010) ("[W]e conclude that the bankruptcy court did not clearly err in finding that the state court contempt action was civil in nature and thus subject to the automatic stay."); *In re Wohleber*, 596 B.R. 554, 569 (B.A.P. 6th Cir. 2019) ("[C]ivil contempt proceedings are subject to the automatic stay, while criminal contempt proceedings are not[.]"); *In re Dillon*, 619 B.R. 357, 362 (Bankr. S.D. Miss. 2020) ("The automatic stay does not apply to criminal contempt proceedings. But the stay does apply to civil contempt proceedings." (internal citations omitted)). To be sure, "[a] contempt proceeding is either civil or criminal by virtue of its 'character and purpose,'" rather than based on the label it has been given. *Cobell*, 334 F.3d at 1145 (quoting *Bagwell*, 512 U.S. at 827); *see also In re Wohleber*, 596 B.R. at 569 ("[C]ourts may look beyond the label applied to the contempt proceeding to 'the circumstances surrounding the contempt [proceeding] to determine whether it

is criminal or civil in nature.'" (second alteration in original) (quoting *In re Burgess*, 503 B.R. 154, 156 (Bankr. M.D. Fla. 2014)). But, again, here the purpose appears to be to coerce compliance and compensate for losses, which are civil purposes.

The NLRB's single paragraph urging the Court to find the automatic stay inapplicable because of the nature of these contempt proceedings does not address any of these complications. *See* ECF No. 26 at 4–5. Therefore, if the agency intends to press this argument, it must do so in its further briefing.[9]

## CONCLUSION

The briefing by the NLRB and the Bankruptcy Trustee is sufficient for the Court to determine that it has the authority decide whether the automatic stay is applicable to these proceedings. As to the merits of that question, however, the Court's own research has uncovered complexities left unaddressed by those parties. Because "[o]ur adversarial system relies on the advocates to inform the discussion and raise the issues to the court," *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003), the Court will order further briefing on whether these proceedings are excepted from the automatic stay. Accordingly, it is hereby

**ORDERED** that the NLRB shall serve a copy of this Memorandum Opinion and Order on Ampersand's Bankruptcy Trustee forthwith. It is further

**ORDERED** that the NLRB shall file a supplemental brief addressing the issues raised in this opinion on or before November 1, 2023. It is further

**ORDERED** that the Bankruptcy Trustee shall file a response to the NLRB's supplemental brief (and complete any preliminary steps to allow it to do so in accordance with the Federal Rules

---

[9] The Court notes that if the NLRB wants to argue that this is actually a *criminal* contempt proceeding, that might raise questions about whether it is properly before this Court, as the D.C. Circuit referred it as a petition for an adjudication in civil contempt to be conducted under the Federal Rules of Civil Procedure. *See* ECF No. 1 at 1–2.

of Civil Procedure and this Court's Local Civil Rules) on or before November 15, 2023.  It is further

**ORDERED** that the NLRB shall file any reply to the Bankruptcy Trustee's response on or before November 22, 2023.

**SO ORDERED.**


Date:  October 18, 2023                                   _____
                                                          G. MICHAEL HARVEY
                                                          UNITED STATES MAGISTRATE JUDGE